## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

---

In re:

                                             **Chapter 11**

**James W. Ehlers**                        **Case No.: 16-29505-BEH**

                        **Debtor.**

---

### DEBTOR'S AMENDED PLAN OF REORGANIZATION

---

James W. Ehlers, as debtor in possession, proposes the following amended plan of reorganization in his case pursuant to Section 1121 of chapter 11 of title 11 of the United States Code:

## ARTICLE I

**DEFINITIONS:**

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. The terms defined shall be equally applicable to both the singular and plural forms of each term unless the context otherwise requires. Any term used in the Plan that is not defined here, but that is defined in the Code shall have the meaning assigned to that term in the Code. Any term used in initially capitalized form in the Plan shall have the same meaning in the disclosure statement, filed with the Plan, unless the context otherwise requires.

    1.1    *506(b) Claim* shall mean a Claim by any Creditor under § 506(b) of the Code.

Evan P. Schmit
Kerkman & Dunn
839 N. Jefferson St., Suite 400
Milwaukee, WI 53202
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kwdlaw.com

1.2     *Administrative Claimant* shall mean any person or entity entitled to payment for an Administrative Expense.

1.3     *Administrative Expense* shall mean any claim, as defined by the Bankruptcy Code, which arises after the Petition Date and constitutes (i) an unpaid or unreimbursed cost or expense of administering either Chapter 11 case allowed under the Code including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor; (ii) any actual and necessary expense of operating the business of the Debtor; (iii) any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of their business or for the acquisition or lease of property or for the procurement of services; (iv) any costs or expenses of the Reorganized Debtor for the administration and implementation of the Plan, for the administration, prosecution or defense of any Claim by or against the Debtor, and for administration of the Plan; and (v) any allowances of compensation and reimbursement of expenses to the extent allowed by the Final Order, whether arising before or after the Effective Date.

1.4     *Allowed Claim* shall mean any Claim (a) with respect to which a proof of claim has been filed with the Bankruptcy Court on or before the date to be fixed as provided by the Bankruptcy Court pursuant to Rule 3003; or (b) scheduled in the list of creditors prepared and filed pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount; and for either (a) or (b), any Claim for which no objection has been filed within the applicable limitation fixed by Rule 3007 or by a Bankruptcy Court order, or any Claim for which any such objection has been resolved by an order no longer subject to appeal or for which no appeal is pending.

1.5     *Allowed Priority Claim* shall mean an Allowed Claim for which the holder asserts,

and is determined to be entitled to, priority under § 507 of the Code or under any other provision of the Code including, without limitation, Claims for Administrative Expenses and tax claims.

1.6     *Allowed Secured Claim* shall mean an Allowed Claim secured by a valid and enforceable lien, security interest, mortgage or other recognized interest in property in which the Debtor has an interest, which is not void or voidable under any state or federal law or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code. That portion of an Allowed Claim that is not an Allowed Secured Claim shall be an Allowed Unsecured Claim.

1.7     *Allowed Unsecured Claim* shall mean any Allowed Claim that is not an Allowed Secured Claim, an Allowed Priority Claim, an Allowed 506(b) Claim or an Administrative Expense.

1.8     *Arizona Property* shall mean the Debtor's real property located at 15695 W. Earll Dr., Goodyear, AZ 85395.

1.9     *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Eastern District of Wisconsin and any federal court with concurrent or appellate jurisdiction.

1.10    *BMO Harris* shall mean BMO Harris Bank N.A. that holds a second mortgage on the Naples Property.

1.11    *Cash* shall mean by a check drawn on the Debtor's bank account which has sufficient funds to pay the check when it is presented to the Debtor's bank.

1.12    *CCAP Auto* shall mean CCAP Auto Lease LTD which held a first priority lien against the Debtor's 2014 Jeep Cherokee.

1.13    *Claim* shall mean any right to payment, or right to an equitable remedy for breach

3

of contract or performance if such breach gives rise to a right of payment, asserted against the Debtor that was in existence on or as of the Petition Date, whether or not the right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured

1.14    *Class* shall mean the classes specified in Article II of the Plan.

1.15    *Code* shall mean title 11 of the United States Code as amended from time to time.

1.16    *Colorado Property* shall mean Debtor's condominium unit that is located at 22714 US Hwy 6 Dillon, CO 80435.

1.17    *Confirmation Date* shall mean the date upon which the Bankruptcy Court's Order of Confirmation, pursuant to § 1129 of the Code, becomes a Final Order.

1.18    *Court Approved Interest Rate* shall mean the rate of interest determined by the Bankruptcy Court which the Debtor is required to pay a Class of Creditors so that the deferred Cash payments to the Creditors in the Class have a value as of the Effective Date equal to the Creditors' Allowed Claim in order to comply with § 1129(b)(2)(A)(II) or (B)(i) of the Code.

1.19    *Creditor* shall mean any person or entity that has a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date, including a Claim against the Debtor's estate under §§ 502(g) or 502(i) of the Code.

1.20    *Debtor* means James W. Ehlers.

1.21    *Debtor in Possession* shall mean the Debtor as the Debtor in Possession pursuant to §§ 1107 and 1108 of the Code.

1.22    *Deutsche Bank* shall mean Deutsche Bank National Trust Company, acting as trustee for HarborView Mortgage Loan Trust 2005-9 Mortgage Loan Pass-Through Certificate,

4

Series 2005-9 also known as Specialized Loan Servicing, LLC ("SLS"), the holder of a first mortgage on the Naples Property.

1.23    *Disputed Claim* shall mean a Claim against the Debtor the allowance of which, in whole or in part, is the subject of a timely objection; provided, however, that for purposes of determining the aggregate amount of Disputed Claims against a Debtor's estate, Disputed Claim shall mean the lesser of (a) the total amount of Disputed Claims as filed with the Bankruptcy Court or (b) the total amount of Disputed Claims as estimated by the Bankruptcy Court pursuant to § 502(c) of the Code; and, provided, further, that in the event the Bankruptcy Court estimated a Disputed Claim for purposes of allowance pursuant to § 502(c), that estimation shall constitute the Allowed Claim.

1.24    *Ditech Financial* shall mean Ditech Financial LLC that holds first mortgages on the Colorado Property and Milwaukee Property for separate Claims.

1.25    *Effective Date* shall mean the date when all of the conditions set forth in Article X of the Plan have been satisfied or waived.

1.26    *Final Order* shall mean an order entered by the Bankruptcy Court as to which the time to appeal or to seek review or rehearing has expired and as which no appeal or other proceedings for review or rehearing shall then be pending.

1.27    *Fish Creek Property* shall mean the Debtor's real property located at 36002 N. Haven Dr., Fish Creek, WI 54212.

1.28    *Fond Du Lac Property 1* shall mean the Debtor's real property located at 364 4th St., Fond Du Lac, WI 54935.

1.29    *Fond Du Lac Property 2* shall mean the Debtor's real property located at 248 Elm

St., Fond Du Lac, WI 54935.

1.30    *Fond Du Lac Properties* shall mean collectively Fond Du Lac Property 1 and Fond Du Lac Property 2.

1.31    *JP Morgan Chase* shall mean JP Morgan Chase Bank that holds a first mortgage on the Residence.

1.32    *Loan Documents* shall mean the all documents which constitute an agreement between the Debtors and a Creditor which were in effect as of the Petition Date.

1.33    *Milwaukee Property* shall mean Debtor's apartment that is located at 1550 N. Warren Ave. #110 Milwaukee, WI 53202.

1.34    *Naples Property* shall mean Debtor's real property that is located at 486 Countryside Naples, FL 34104.

1.35    *Net Monthly Cash Flow* shall mean the sum of incoming Cash and outgoing Cash realized in the Reorganized Debtor's normal business operations for a one-month period.

1.36    *Old National* shall mean Old National Bank that holds a first mortgage on Fond Du Lac Property 2.

1.37    *Order of Confirmation* shall mean the order entered by the Bankruptcy Court confirming the Plan.

1.38    *Person* means any individual, corporation, general partnership, limited partnership, association, limited liability company, joint stock company, joint venture, estate, unincorporated organization, government or any political subdivision thereof, governmental unit, or other entity.

1.39    *Petition Date* shall mean September 27, 2016, the date on which the Debtor filed his voluntary petition for reorganization under Chapter 13.

6

1.40 *Plan* shall mean this Chapter 11 plan of reorganization and any amendment, modification or alteration thereto in accordance with the Code.

1.41 *Prepetition Loan Documents* means the valid and enforceable promissory notes, mortgages, security agreements, guaranties and related loan documents in effect as of the Petition Date between the Debtor and the Lenders, as amended by the Plan or an order entered by the Bankruptcy Court during this case, but (a) excluding the effect of any provision described in § 365(b)(2) of the Code that would act as a default immediately before the Effective Date, and (b) subject to the following amendments: (i) any and all provisions in the loan documents that conflict with or are otherwise inconsistent with the Plan, orders entered by the Bankruptcy Court and/or the Debtor's financial projections are deleted, (ii) the Debtor shall have the right to prepay the outstanding amount due any Lender at any time without payment of a prepayment penalty, (iii) all net worth, debt service coverage, insolvency, capital requirements and other financial performance requirements, covenants and/or ratios are deemed deleted, (iv) the Lenders shall provide Debtor with written notice of all payment and non-payment defaults, a 5-day cure period for payment defaults and a 15-day cure period (or such longer period as may be necessary and reasonable under the circumstances) to cure non-payment defaults, (v) a Lender's determination that there has been a material change in collectability of the loan shall not constitute a loan default and any such provision or similar subjective provision is deleted, (vi) any prepetition defaults under the Prepetition Loan Documents are waived by the Lenders, (v) prohibitions on secondary liens and indebtedness securing purchases made in the ordinary course of business are deleted, (vii) Debtor shall have the right to contest and/or remove mechanic's and similar liens, and (viii) minimum occupancy requirements and covenants are deleted.

7

1.42    *Pro-Rata Share* shall mean, with respect to any holder of an Allowed Claim, an amount calculated by and reduced to the proportion that the amount of the Claim bears to the aggregate amount of all Claims in the same Class.

1.43    *Reorganized Debtor* shall mean the Debtor after the Plan has been confirmed by the Confirmation Order and after the Effective Date.

1.44    *Residence* shall mean the Debtor's residence that is located at 606 Wood Ct. Mayville, WI 53050.

1.45    *Sale Proceeds* shall mean the funds received by the Debtor from the proposed sale of the Colorado Property submitted for approval by the Debtor's motion filed May 25, 2018 with notice to all Creditors.

1.46    *Secured Claim* shall mean any Claim against the Debtor secured by a valid and enforceable lien, security interest, mortgage or interest in property in which the Debtor has an interest, which is not void or voidable under state or federal law or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code.

1.47    *Seterus* shall mean Seterus, Inc., who acts as servicing agent for the Federal National Mortgage Association ("Fannie Mae"), the holder of first mortgages on the Fish Creek Property and Arizona Property for separate Claims.

1.48    *SN Servicing* shall mean SN Servicing Corporation for Chalet Series III Trust, who effective August 15, 2018 acts as servicing agent for MTGLQ Investors, L.P., who holds a first mortgage against Fond Du Lac Property 1 by assignment from Nationstar Mortgage.

1.49    *Toyota* shall mean Toyota Motor Credit Corporation that holds a first priority lien on the Debtor's 2014 Toyota Camry.

1.50    *Unsecured Claim* shall mean any Claim other than a Secured Claim, a Priority Claim, or an Administrative Expense.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS:

The Plan classifies the Claims against the Debtor as follows:

2.1    Class 1 shall consist of all Administrative Expenses of the Debtor.

2.2    Class 2 shall consist of all Allowed Priority and Allowed Secured Claims of the Wisconsin Department of Revenue, the Internal Revenue Service and other taxing authorities which are entitled to priority pursuant to § 507(a)(8) of the Code or secured.

2.3A    Class 3A shall consist of the Allowed Secured Claim of BMO Harris that holds a second mortgage on the Naples Property.

2.3B    Class 3B shall consist of the Allowed Secured Claim of Ditech Financial that holds a first mortgage on the Colorado Property.

2.3C    Class 3C shall consist of the Allowed Secured Claim of Ditech Financial that holds a first mortgage on the Milwaukee Property.

2.3D    Class 3D shall consist of the Allowed Secured Claim of JP Morgan Chase that holds the first mortgage on the Residence.

2.3E    Class 3E shall consist of the Allowed Secured Claim of SN Servicing, acting as servicing agent for MTGLQ Investors Ltd., holder of a first mortgage on the Fond Du Lac Property 1.

2.3F    Class 3F shall consist of the Allowed Secured Claim of Old National Bank that holds the first mortgage on the Fond Du Lac Property 2.

9

2.3G  Class 3G shall consist of the Allowed Secured Claim of Seterus, acting as a servicing agent for the Fannie Mae, holder of a first mortgage on the Fish Creek Property.

2.3H  Class 3H shall consist of the Allowed Secured Claim of Seterus, acting as a servicing agent for the Fannie Mae, holder of a first mortgage on the Arizona Property.

2.3I  Class 3I shall consist of the Allowed Secured Claim of Toyota that holds a first priority lien on the Debtor's 2014 Toyota Camry.

2.3J  Class 3J shall consist of the Allowed Secured Claim of Deutsche Bank, acting as Trustee for SLS, servicing agent for HarborView Mortgage Loan Trust 2005-9 Mortgage Loan Pass-Through Certificates, Series 2005-9, the holder of a first mortgage on the Naples Property.

2.3k  Class 3K shall consist of the Allowed Secured Claim of CCAP Auto that held a first priority lien on the Debtor's 2014 Jeep Cherokee.

2.4  Class 4 shall consist of the Allowed Unsecured Claims that are not included in Classes 1 through 3.

2.5  Class 5 shall consist of the Debtors' equity interests in their assets.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS:

A summary of Claims and the classification of each as described in Article 3 of the Plan is attached to this Plan and incorporated herein as Addendum 1. In the "description" column on Addendum 1 is a listing of the Collateral of each Creditor in Classes 3A through 3K, as detailed further below.

**3.1**  *Class 1:  Administrative Claims.*

Administrative Expenses in Class 1 are unimpaired under the Plan and shall be paid (i) in full in Cash on the Effective date, (ii) upon such other terms as may be agreed to in writing by the

10

holder of any Allowed Claim in Class 1 and the Debtor, or (iii) if such Claim is allowed after the Effective Date, as soon as such Claim is allowed. Administrative Claims in the ordinary course of business by the Debtor after the Petition Date shall be paid in the ordinary course.

**3.2     *Class 2: Allowed Priority Unsecured Tax Claims.***

Allowed Claims in Class 2 are impaired under the Plan. The Debtor previously paid the secure portion of the Internal Revenue Service's claim through an approved sale of the Colorado Property. The Debtor will make monthly payments of interest only at the rate specified by 11 U.S.C. § 511 commencing on the first day of the first month following the Effective Date. The principal balance of any claim amount shall be satisfied from the proceeds of future sales of the Debtor's Fond Du Lac Properties as set forth in the Plan.

**3.3     *Class 3A:   Allowed Secured Claim of BMO Harris.***

   i.     BMO Harris's Claim is secured by a second mortgage on the Naples Property.

   ii.     *Impairment.* The Allowed Secured Claim in Class 3A is impaired.

   iii.     *Amount.* The Class 3A Allowed Secured Claim of BMO Harris is deemed to be $64,153.

   iv.     *Retention of Liens.* BMO Harris shall retain its Liens on its Collateral to secure the obligations due to BMO Harris on its Allowed Secured Claim pursuant to the Plan. BMO Harris's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

   v.     *Treatment of Collateral.* BMO Harris's Collateral shall be retained by the Debtor and Reorganized Debtor.

   vi.     *Treatment of Secured Claim.* BMO Harris's Allowed Secured Claim shall be paid by the Debtor in equal monthly installments of principal and fixed interest at 4.75% per annum, amortized over 30 years with a maturity date of 30 years from the first installment, with no prepayment penalty. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until Class 3A is paid in full.

**3.4     *Class 3B:   Allowed Secured Claim 1 of Ditech Financial.***

   i.     Ditech Financial's Claim in Class 3B is secured by a first mortgage on the Colorado Property.

   ii.     *Impairment.* The Allowed Secured Claim in Class 3B is unimpaired

Case 16-29505-beh     Doc 204     Filed 08/27/18     Page 11 of 39

iii. *Amount.* The Class 3B Allowed Secured Claim of Ditech Financial is the amount due as of the Closing on the Colorado Property estimated to be $158,861.

iv. *Treatment of Secured Claim.* Ditech's Allowed Secured Claim in Class 3B was paid in full from the Sale Proceeds.

**3.5** *Class 3C:   Allowed Secured Claim 2 of Ditech Financial.*

i. Ditech Financial's Claim in Class 3C is secured by a first mortgage on the Milwaukee Property.

ii. *Impairment.* The Allowed Secured Claim in Class 3C is impaired.

iii. *Amount.* The Class 3C Allowed Secured Claim of Ditech Financial shall equal the balance due as of Date of Confirmation estimated to be approximately $89,772.

iv. *Retention of Liens.* Ditech Financial shall retain its Liens on its Collateral to secure the obligations due to Ditech Financial on its Allowed Secured Claim in Class 3C pursuant to the Plan. Ditech Financial's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

v. *Treatment of Collateral.* Ditech Financial's Collateral shall be retained by the Debtor and Reorganized Debtor.

vi. *Treatment of Secured Claim.* Ditech Financial's Allowed Secured Claim shall be paid by the Debtor in equal monthly installments of principal and fixed interest at 4.75% per annum, amortized over 30 years with a maturity date of 30 years from the first installment, with no prepayment penalty. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full principal amount is paid.

**3.6** *Class 3D:   Allowed Secured Claim JP Morgan Chase*

i. JP Morgan Chase's Claim in Class 3D is secured by a first mortgage on the Residence.

ii. *Impairment.* The Allowed Secured Claim in Class 3D is impaired.

iii. *Amount.* The Class 3D Allowed Secured Claim of JP Morgan Chase shall equal the balance due as of Date of Confirmation estimated to be approximately $51,272.

iv. *Retention of Liens.* JP Morgan Chase shall retain its Liens on its Collateral to secure the obligations due to JP Morgan Chase on its Allowed Secured Claim pursuant to the Plan.

12

v.   *Treatment of Collateral.* JP Morgan Chase's Collateral shall be retained by the Debtor and Reorganized Debtor.

i.   *Treatment of Secured Claim.* JP Morgan Chase's Allowed Secured Claim shall be paid by the Debtor in accordance with the terms of the loan modification agreement entered into with the Debtor as validated by a Bankruptcy Court order entered June 28, 2018. A copy of the Order is attached to the Plan as Addendum 6.0.

**3.7    *Class 3E:    Allowed Secured Claim SN Servicing***

i.   SN Servicing's Claim in Class 3E is secured by a first mortgage on the Fond Du Lac Property 1.

ii.   *Impairment.* The Allowed Secured Claim in Class 3E is impaired.

iii.   *Amount.* The Class 3E Allowed Secured Claim of SN Servicing shall equal the balance due as of Date of Confirmation estimated to be not more than $70,920.

iv.   *Retention of Liens.* SN Servicing shall retain its Liens on its Collateral to secure the obligations due to SN Servicing on its Allowed Secured Claim pursuant to the Plan. SN Servicing's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

v.   *Treatment of Collateral.* SN Servicing's Collateral shall be retained by the Debtor and Reorganized Debtor.

vi.   *Treatment of Secured Claim.* SN Servicing's Allowed Secured Claim shall be paid by the Debtor in equal monthly installments of principal and fixed interest at 4.75% per annum, amortized over 30 years with a maturity date of 30 years from the first installment, with no prepayment penalty. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full principal amount is paid.

**3.8    *Class 3F:    Allowed Secured Claim of Old National.***

i.   Old National's Claim in Class 3F is secured by a first mortgage on the Fond Du Lac Property 2.

ii.   *Impairment.* The Allowed Secured Claim in Class 3F is impaired.

iii.   *Amount.* The Class 3F Allowed Secured Claim of Old National shall equal the balance due as of Date of Confirmation plus attorney's fees allowed under 11 U.S.C. § 506(b) (estimated at $6,000) for a total of approximately $26,000.

13

iv.   *Retention of Liens.* Old National shall retain its Liens on its Collateral to secure the obligations due to Old National on its Allowed Secured Claim pursuant to the Plan. Old National's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

v.   *Treatment of Collateral.* Old National's Collateral shall be retained by the Debtor and Reorganized Debtor.

vi.   *Treatment of Secured Claim.* Old National's Allowed Secured Claim shall be paid by the Debtor in monthly installments shall be fixed at $229.04, principal and fixed interest at 4.05% per annum, amortized over 30 years with a maturity date of 5 years from the first installment and balloon payment of any balance owed, with no prepayment penalty. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full principal amount is paid. The Debtor is responsible for escrowing for taxes and paying for insurance, failure to do either shall constitute a default of the Plan.

**3.9    *Class 3G:   Allowed Secured Claim 1 of Seterus.***

i.   Seterus's Claim in Class 3G is secured by a first mortgage on the Fish Creek Property.

ii.   *Impairment.* The Allowed Secured Claim in Class 3G is impaired.

iii.   *Amount.* The Class 3G Allowed Secured Claim of Seterus shall equal the balance due as of Date of Confirmation comprising the unpaid principal balance estimated to be approximately $212,000, together with overdrawn escrow balance, accrued interest, fee charges and expenses.

iv.   *Retention of Liens.* Seterus shall retain its Liens on its Collateral to secure the obligations due to Seterus on its Allowed Secured Claim in Class 3G pursuant to the Plan. Seterus's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

v.   *Treatment of Collateral.* Seterus's Collateral shall be retained by the Debtor and Reorganized Debtor.

vi.   *Treatment of Secured Claim.* Seterus's Allowed Secured Claim in Class 3G shall be paid by the Debtor in equal monthly installments of principal and fixed interest at 4.75%, amortized over 30 years with no prepayment penalty. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full

14

principal amount is paid. The maturity date remains January 1, 2055. Seterus will escrow for taxes and insurance.

**3.10**   *Class 3H:   Allowed Secured Claim 2 of Seterus.*

   i.    Seterus's Claim in Class 3H is secured by a first mortgage on the Arizona Property.

  ii.    *Impairment.* The Allowed Secured Claim in Class 3H is impaired.

 iii.    *Amount.* The Class 3H Allowed Secured Claim of Seterus shall equal the balance due as of Date of Confirmation comprising the estimated unpaid principal balance of approximately $196,000, together with overdrawn escrow balance, accrued interest, fee charges, and expenses.

 iv.    *Retention of Liens.* Seterus shall retain its Liens on its Collateral to secure the obligations due to Seterus on its Allowed Secured Claim pursuant to the Plan. Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

  v.    *Treatment of Collateral.* Seterus's Collateral shall be retained by the Debtor and Reorganized Debtor.

 vi.    *Treatment of Secured Claim.* Seterus's Allowed Secured Claim shall be paid by the Debtor in equal monthly installments of principal and interest at 4.75%, amortized over 30 years with no prepayment penalty. The interest rate will vary according to the terms of the Pre-petition Loan Documents. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full principal amount is paid. The maturity date remains May 1, 2035. Seterus will escrow for taxes and insurance.

**3.11**   *Class 3I:   Allowed Secured Claim of Toyota.*

  ii.    Toyota's Claim in Class 3I is secured by a first priority lien on the Debtor's 2014 Toyota Camry.

 iii.    *Impairment.* The Allowed Secured Claim in Class 3I is unimpaired.

 *iv.*    *Amount.* The Class 3I Allowed Secured Claim of Toyota shall equal the balance due as of Date of Confirmation $11,642.

  v.    *Retention of Liens.* Toyota shall retain its Liens on its Collateral to secure the obligations due to Toyota on its Allowed Secured Claim pursuant to the Plan. Toyota's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

vi.     *Treatment of Collateral.* Toyota's Collateral shall be retained by the Debtor and Reorganized Debtor.

vii.    *Treatment of Secured Claim.* Toyota's Allowed Secured Claim shall be paid by the Debtor in accordance with the terms of the Stipulation approved by Order of the Court entered January 22, 2018. The Debtor shall continue to make equal monthly installments of $141.98 subject to any increase in accordance with the Prepetition Loan Documents with any remaining balance due on the maturity date. A copy of the Order is attached to the Plan as Addendum 7.0.

**3.12    *Class 3J:    Allowed Secured Claim Deutsche Bank.***

i.      Deutsche Bank's Claim in Class 3J is secured by a first mortgage on the Milwaukee Property.

ii.     *Impairment.* The Allowed Secured Claim in Class 3J is impaired.

iii.    *Amount.* The Class 3J Allowed Secured Claim of Deutsche Bank shall equal the balance due as of Date of Confirmation estimated to be approximately $162,000.

iv.     *Retention of Liens.* Deutsche Bank shall retain its Liens on its Collateral to secure the obligations due to Deutsche Bank on its Allowed Secured Claim pursuant to the Plan. Deutsche Bank's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

v.      *Treatment of Collateral.* Deutsche Bank's Collateral shall be retained by the Debtor and Reorganized Debtor.

vi.     *Treatment of Secured Claim.* Deutsche Bank's Allowed Secured Claim shall be paid by the Debtor in equal monthly installments of principal and interest at 4.75% per annum, amortized over 30 years with a maturity date of 30 years from the first installment, with no prepayment penalty. The monthly installments will commence on the 1st day of the first month after the Effective Date and will be paid on the 1st day of each subsequent month until the full principal amount is paid.

**3.13    *Class 3K:    Allowed Secured Claim of CCAP Auto.***

i.      CCAP Auto's Claim in Class 3K was paid in full by the Debtor in the ordinary course during the bankruptcy.

**3.14    Class 4:    *Allowed Unsecured Claims.***

16

Allowed Claims in Class 4 are unimpaired under the Plan. They will be paid in full on the Effective Date from Cash on hand in the Debtor's debtor-in-possession accounts.

**3.15  *Prepayment Without Penalty.***

At any time, the Debtor may prepay, without penalty, any of their obligations under the Plan to any Creditor if the Debtor has the ability to do so and otherwise comply with their obligations within the terms and as required under the Plan.

**3.16  *Interest Accrued between Confirmation and Effective Date***

For any period between confirmation of the Debtor's Plan and the Effective Date, interest will accrue at the proposed Plan rates for any Allowed Secured Claim. The Debtor shall pay the interest accrued during such period to any Secured Creditor as part of the second monthly payment due under the Plan.

## ARTICLE IV

## PROVISION FOR TREATMENT OF DISPUTED CLAIMS:

**4.1  *Objection to Claims; Prosecution of Disputed Claims.*** The Debtor or the Reorganized Debtor shall object to the allowance of any Claims filed with the Bankruptcy Court with respect to which the Debtor or Reorganized Debtor dispute liability in whole or in part. All objections shall be litigated to a Final Order; provided, however, that the Reorganized Debtor may compromise and settle objections to Claims without notice and without the approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall serve and file all objections to Claims as soon as practicable but in no event later than 60 days after the Effective Date or at such other date approved by the Bankruptcy Court.

**4.2  *Payments and Distributions on Disputed Claims.*** From and after the Effective Date, the Reorganized Debtor shall hold and reserve in a segregated account, for the benefit of each holder of a Disputed Claim, Cash in an amount equal to the distribution that would have been made to the holder of any Disputed Claim if it were an Allowed Claim in an amount equal to the

17

lesser of (i) the amount of the Disputed Claim or (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to § 502 of the Code for purposes of allowance. Any Cash reserved and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing (a) any additional amounts to be paid in cash in the event the Disputed Claim ultimately becomes an Allowed Claim or (b) any interest payable in accordance with the Plan by the Debtors with respect to such Disputed Claim at the time or times such Cash is reserved. Any Cash reserved for the benefit of holders of Disputed Claims shall be held by the Reorganized Debtors in an interest-bearing account. No payment or distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution of the Claim by a Final Order.

At the time a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder of the Allowed Claim shall receive the payment(s) and distribution(s) to which it is then entitled under the Plan, together with any interest that has accrued on the amount of cash so reserved, but only to the extent that the interest is attributable to the amount of the Allowed Claim. Such payment(s) shall be made as soon as practicable after the date the Bankruptcy Court enters a Final Order allowing such Claim but in no event later than 30 days after the date of the Final Order. Any Cash reserved for but not necessary to pay an Allowed Claim shall be retained by the Reorganized Debtor. Disputed Claims which are disallowed shall receive nothing to the extent they are disallowed.

## ARTICLE V

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN:

**5.1** ***Cash for Payments to Creditors on and after the Effective Date.*** All payments to

18

Creditors shall be from the Sale Proceeds, Cash on hand on the Effective Date, Sale of the Fond Du Lac Properties and Arizona Property, and the regular income of the Debtor. A cash flow budget prepared internally by the Debtor, his accountant, and his counsel is attached as **Addendum 2** to the Plan. This budget is forward looking, contains estimates and assumptions, and may not reflect actual outcomes of the Debtor's operations. The Debtor may file a revised Addendum 2 at any time prior to the Confirmation Date.

       **5.2**    ***Sale of Fond Du Lac Properties and Arizona Property.*** The Reorganized Debtor will begin marketing the Fond Du Lac Properties for sale with the intent to sell in 2018. Within 30 days of the Effective Date the Debtor will engage a real estate broker familiar with the regional market to market and broker the sales. The Debtor has had initial talks with representatives of First Weber. The estimated time for sale is 3-6 months on market. Any net sale proceeds will first be used to pay the balance of any Class 2 Allowed Priority Unsecured Tax Claims. The balance of any sale proceeds will be retained by the Reorganized Debtor. The Reorganized Debtor will begin marketing the Arizona Property after the sale of the Fond Du Lac Properties with the intent to sell in 2019. The balance of the sale proceeds will be retained by the Reorganized Debtor.

       **5.3**    ***Debtor's Management.***   The Debtor shall manage his affairs after the Effective Date.

       **5.4**    ***Withholding Taxes.***   The Reorganized Debtor shall withhold from distributions under the Plan any property which must be withheld for taxes payable by the Person entitled to such property to the extent required by applicable law.

       **5.5**    ***Professional Fees and Expenses.***   Each Person retained or requesting compensation in this case pursuant to §§ 327, 328, 330, 503(b) or 1103 of the Code shall be entitled

to file an application for allowance of final compensation and reimbursement of expenses in the case by the date set by the Court.

      **5.6**     ***Mailing and Unclaimed Distributions.***  All distributions made by mail will be made to (a) the latest mailing address filed of record with the Bankruptcy Court for the party entitled thereto, (b) if no such mailing address has so been filed, the mailing address reflected in the schedule of assets and liabilities filed by the Debtor, or (c) any other address known to Debtor. Any unclaimed distributions which would otherwise have been disbursed to a Creditor with respect to an Allowed Claim shall be retained as property of the Reorganized Debtor if the Creditor cannot be located.

      **5.7**     ***Responsible Person.***  Except as otherwise may be provided herein, the Reorganized Debtor shall be responsible for their execution and implementation of the Plan.

      **5.8**     ***Re-vesting of Property***.  The Reorganized Debtor shall retain all of their property, whether acquired before or after the Petition Date, which shall be vested in them upon confirmation free and clear of all liens and encumbrances except as provided in the Plan, subject only to the requirements imposed by Article III of the Plan and encumbrances of governmental authorities and utilities for easements and services.

      **5.9**     ***Settlement of Actions Brought by the Debtor***. The Reorganized Debtor may settle or compromise any action brought by it without notice or Court approval.

      **5.10**    ***Preference, Fraudulent Conveyances and Avoidance Actions***.  Except for (i) causes of action against a person or entity which is not a Creditor and (ii) causes of action included in any objection by the Debtor or Reorganized Debtor to a proof of claim filed by the date for such objections set by the Court, the Debtor will not bring any preferential transfer, fraudulent

20

conveyance or other avoidance action under Chapter 5 of the Code against any Creditor. All avoidance actions under Chapter 5 of the Bankruptcy Code against Creditors preserved in the Plan vest in the Reorganized Debtor.

**5.11** ***Confirmation of the Plan Without Approval of Classes Entitled to Priority Over Class 5.*** If any Class is entitled to vote and votes to reject the Plan, the Debtor shall request that the Court cram the Plan down pursuant to § 1129(b) of the Code.

**5.12** ***Payment of U.S. Trustee Fees.*** The Reorganized Debtor shall pay all fees due after the Confirmation Date pursuant to 28 U.S.C. § 1930 until the case is closed.

**5.13** ***Professional Fees.*** The Reorganized Debtor shall not pay any professional fees or costs incurred before the Confirmation Date except as approved by the Court or otherwise allowed by law. The payment of any professional fees or costs after the Confirmation Date to implement the Plan shall only be made if such fees and costs are reasonable.

**5.14** ***Creditors Asserting 506(b) Claims.*** Any Creditor claiming fees, charges, costs or interest pursuant to section 506(b) of the Code shall file its 506(b) Claim with the Bankruptcy Court within 30 days of the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court, the Debtor or Reorganized Debtor shall have 21 days from the filing of a 506(b) Claim to object in whole or in part. All objections shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle objections to 506(b) Claims without notice, unless such notice is requested by any party in interest, and without the approval of the Bankruptcy Court. Any portion of a 506(b) Claim agreed upon by the Reorganized Debtor or Allowed by the Bankruptcy Court shall be added to such Creditor's Allowed Secured Claim and paid pursuant to the Plan.

21

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES:

All executory contracts and unexpired leases not specifically rejected in this Plan or otherwise dealt with during the bankruptcy case are assumed. The amounts necessary to cure any defaults of executory contracts or unexpired leases through the Confirmation Date are deemed to be the "Arrearage Amounts" stated on the attached **Addendum 5.0** unless the party to an executory contract or unexpired lease files and serves on the Debtor's attorney an objection to such amount before the date set by the Bankruptcy Court for returning ballots voting on the Plan. The objection must state the amount which the party asserts is due to cure any default on the payment terms specified in the Plan. If an objection is filed, the Court shall determine the proper amount necessary to cure any default as required by § 365(b) of the Code. The Debtor and the Reorganized Debtor reserve the right to reject an executory contract or unexpired lease for which an objection described in this paragraph of the Plan is filed by filing a motion to approve such rejection at any time within 20 days after an order resolving the objection to the Arrearage Amount becomes a Final Order. The defaults with respect to the unexpired leases and executory contracts to be assumed under the Plan shall be paid on the Effective Date.

## ARTICLE VII

## AMENDMENTS AND WAIVER:

Except as otherwise provided in the Plan and § 1127 of the Code, any term of the Plan may be amended or modified at any time, and the enforcement and observance of any term of the Plan may be waived at any time provided that all holders of Claims affected by the amendment of waiver have received notice of the proposed amendment or waiver and have not objected in writing

within a reasonable period of time and, in any event, any period of time which may be set by the Bankruptcy Court.

## ARTICLE VIII

## EFFECT OF CONFIRMATION:

8.1     *Discharge of Debtor*.   Except as otherwise provided in the Plan or the Order of Confirmation, the Order of Confirmation vests all of the property of the estate in the Debtor free and clear of all claims and interests of Creditors. Upon completion of all Plan payments or as otherwise provided in Section 1141 of the Code, the Debtors will receive a discharge. Until a discharge is granted, the automatic stay provisions of Section 362 of the Code still apply. The provisions of the Plan shall be binding upon the Debtor and any Creditor, whether or not such Creditor has accepted the Plan and regardless of whether the Claims of such Creditor are impaired under the Plan.

8.2     *Injunction.* The Order of Confirmation will provide, *inter alia,* that all Persons who have held, hold or may hold Claims are permanently enjoined from and after the Effective Date from:

(a)     commencing and continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor, or any of their directors, officers, agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any such parties in their representative capacities as agents or employees of the Debtors;

(b)     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Reorganized Debtor or any of their officers, directors, agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any

23

such parties, or the property of such parties with respect to such Claim;

(c)    creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtor or any of their agents, representatives, financial advisors, attorneys or accountants of any such party or against the property of any such party or property of the Debtor, with respect to any such Claim;

(d)    asserting any right of set-off, right of subrogation or recoupment of any kind against any obligation due Debtors, any of their agents, employees, representatives, financial advisors, attorneys, accountants or any affiliates of any such parties, or against the property of any such parties of the property of their affiliates, with respect to such Claim; and

(e)    commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim.

8.3    *Consummation*.  Upon substantial consummation of the Plan, the Reorganized Debtor may move for a final decree closing the Case and requesting such orders as may be just and equitable.

## ARTICLE IX

## RETENTION OF JURISDICTION:

The Bankruptcy Court may retain jurisdiction over this Case, until the Plan has been fully consummated, for all appropriate purposes including, but not limited to, the following:

9.1    To hear and determine all applications for compensation of professionals under §§ 330 and 331 of the Code.

9.2    To classify or reclassify the Claim of any Creditor and to resolve any and all objections filed against any Claim. Any failure of the Reorganized Debtor to object to or to

24

examine any Claim for purposes of voting shall not be deemed a waiver of the Reorganized Debtor's right to object to or to re-examine any Claim in whole or in part.

9.3     To determine all questions and disputes arising under the Plan including those regarding title to or interests in the Reorganized Debtor's assets as well as the resolution of all Claims, causes of action, controversies, disputes or conflicts, including any preference, fraudulent conveyance or avoidance action pending as of the Confirmation Date and for which jurisdiction is specifically retained in the Plan.

9.4     To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Order of Confirmation necessary to carry out the purposes and intent of the Plan.

9.5     To modify the Plan after confirmation.

9.6     To enforce and interpret the terms and conditions of the Plan and to enforce all of the orders entered by the Bankruptcy Court.

9.7     To enter any order, including orders for injunctive relief, necessary to enforce the title, rights and powers of the Debtor or Reorganized Debtor as well as the imposition of such restrictions, limitations, terms and conditions as the Bankruptcy Court may deem necessary.

9.8     To supervise or approve any aspect of any Claim that might be pursued on behalf of the Debtor or Reorganized Debtor or any Creditor.

9.9     To resolve all adversary actions brought in the Debtor's case.

9.10    To enter any order concluding and terminating the case.

## ARTICLE X

**CONDITIONS PRECEDENT TO EFFECTIVENESS:**

The Effective Date of the Plan shall occur when each of the following conditions has been

25

met or has been waived in writing by the Debtor and such writing has been filed with the Bankruptcy Court:

10.1 The Order of Confirmation shall have been entered by the Bankruptcy Court without any stay.

10.2 There has not been an appeal of the Confirmation Order filed.

10.3 Ten business days have passed after the last date for an appeal of the Confirmation Order to be filed.

## ARTICLE XI

**MISCELLANEOUS:**

11.1 The headings in the Plan are for convenience and reference only, and shall not limit or otherwise affect the text of the Plan.

11.2 The rules of construction used in Section 102 of the Code shall apply to the construction of the Plan.

11.3 All fees under 28 U.S.C. § 1930, due to the U.S. Trustee, that have not been paid shall be paid within 10 days of the Confirmation Date.

11.4 The liens of all Creditors that have been discharged or avoided shall be released of record prior to any cash distribution or delivery of any property under the Plan to such Creditors.

11.5 The liens of every Creditor with a Claim that is disallowed or whose lien is avoided shall be void and shall be rendered void by the recording in the appropriate place of record of a certified copy of any order disallowing the Claim or avoiding the lien.

11.6 Any orders entered or agreements approved by the Bankruptcy Court for the use of cash collateral, for adequate protection or for payments in lieu of the lifting of the automatic stay

shall be terminated. At that time, the relationship between the respective parties shall be governed by the Plan.

11.7    Unless otherwise provided for in the Plan, no holder of an Allowed Unsecured Claim shall be entitled to the accrual of post-petition interest on account of such Claim.

11.8    Any documents necessary to effect the provisions of the Plan will be filed with the Bankruptcy Court before the hearing on confirmation.

11.9    The attorney fees and costs to administer consummation of the Plan shall be reasonable.

## ARTICLE XII

## CONCLUSION:

The Plan reflects the Debtor's best efforts to reorganize their business in a manner that preserves their continued viability, advances the interests of creditors, and complies in all aspects with the requirements of the Code.

Dated: August 27, 2018

                                          /s/ Evan P. Schmit
                                         Evan P. Schmit

P.O. Address:
                                         Kerkman & Dunn
839 North Jefferson St., Ste. 400        Attorneys for the Debtor
Milwaukee, WI 53202
Phone:   414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kwdlaw.com

27

James W. Ehlers
Case No. 16-29505-BEH

Addendum 1: Plan Summary

| Class | Description | Total Claim Amount on Filing | Post-Petition Payments Made | Net Amount Due As of Effective Date | Paid on Effective Date | Monthly Amounts | Totals 8/1 to 12/31/18 | Totals 2019 | Totals 2020 and 2021 | Total Payments Annually 2022+ |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Cash Available** | | | | | | | | | |
| | Cash Available on Effective Date[1] | | | $ 103,449 | | | | | | |
| | Projected Cash Flow from Professional Work | | | | | $ 17,190 | $ 85,950 | $ 206,281 | $ 206,281 | 206,281 |
| | Net Proceeds from Rental Properties | | | | | $ (8) | $ (40.35) | $ (96.84) | $ (97) | (97) |
| | Personal Expenses | | | | | $ (10,984) | $ (54,920.29) | $ (147,167.69) | $ (147,167.69) | (155,867.69) |
| | **Total Available Cash** | | | $ 103,449 | $ 103,449 | $ 6,198 | $ 30,990 | $ 59,016 | $ 59,016 | $ 50,316 |
| 1 | **Administrative Expenses (Unpaid as of Effective Date)** | | | | | | | | | |
| | KWD | $ - | | | $ 25,000 | | $ - | $ - | $ - | $ - |
| | Accountant (Zaks) | $ - | | | $ 5,056 | | $ - | $ - | $ - | $ - |
| | UST Fees | $ - | $ - | | $ - | $ - | $ - | $ - | $ - | $ - |
| | **Total** | $ - | $ - | $ - | $ 30,056 | $ - | $ - | $ - | $ - | $ - |
| | **Priority/Secured Taxes** | | | | | | | | | |
| 2a | Dodge County Treasurer - 2015 property taxes | $ 4,882 | $ - | $ 4,882 | $ - | $ 48.82 | $ 5,126 | $ - | $ - | $ - |
| 2a | Fond Du Lac , City of | $ 2,648 | $ 2,648 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 2a | Internal Revenue Service - Secured (Satisfied from Sale Proceeds of CO Property) | $ 147,109 | | | $ - | $ - | $ - | $ - | $ - | $ - |
| 2b | Internal Revenue Service - Priority | $ 47,319 | $ - | $ 47,319 | $ - | $ 473.19 | $ 49,685 | $ - | $ - | $ - |
| 2c | WI Department of Revenue | $ 9,707 | $ - | $ 9,707 | $ - | $ 97.07 | $ 10,192 | $ - | $ - | $ - |
| 2c | WI Department of Revenue | $ 21,774 | $ - | $ 21,774 | $ - | $ 217.74 | $ 22,863 | $ - | $ - | $ - |
| | **Total** | $ 233,438 | $ 2,648 | $ 83,681 | $ - | $ 837 | $ 87,865 | $ - | $ - | $ - |
| | **Secured Creditors** | | | | | | | | | |
| 3a | BMO Harris | $ 64,153 | $ - | $ 64,153 | $ - | $ 335 | $ 1,673 | $ 4,016 | $ 4,016 | 4,016 |
| 3b | Ditech -1 (Satisfied from sale proceeds of CO Property) | $ 183,108 | $ 183,108 | $ 0 | $ - | $ 0 | $ 0 | $ 0 | $ 0 | 0 |
| 3c | Ditech - 2 (4.75%, amo 30 years, 30 year term) Escrow $117.13 | $ 100,266 | $ 10,494 | $ 89,772 | $ - | $ 585 | $ 2,927 | $ 7,025 | $ 7,025 | 7,025 |
| 3d | JP Morgan Chase Bank (4.625%, amo. 40 years, 30 year term) Escrow $361.22 | $ 56,272 | $ - | $ 64,953 | $ - | $ 658 | $ 3,292 | $ 7,902 | $ 7,902 | 7,902 |
| 3e | SN Servicing/MTGLQ Investors, L.P. Escrow (no escrow) | $ 70,920 | $ - | $ 70,920 | $ - | $ 370 | $ 1,850 | $ 2,220 | $ - | $ - |
| 3f | Old National Bank (4.05%, 5 year term) (no escrow) | $ 23,737 | N/A | $ 26,000 | $ - | $ 229 | $ 1,145 | $ 1,374 | $ - | $ - |
| 3g | Seterus 1 - subservicer to Fannie Mae (4.75%, amo 30 years) maturity date remains 12/1/2035; Escrow $240.93 | $ 229,554 | $ 17,656 | $ 211,898 | $ - | $ 1,346 | $ 6,731 | $ 16,155 | $ 16,155 | 16,155 |
| 3h | Seterus 2 - subservicer to Fannie Mae (4.75% fixed interest plus escrow until date of sale) Escrow $337.52 | $ 218,103 | $ 21,674 | $ 196,429 | $ - | $ 1,362 | $ 6,811 | $ 8,173 | $ - | $ - |
| 3i | Toyota Motor Credit Corporation | $ 17,842 | $ 6,200 | $ 11,642 | $ - | $ 825 | $ 4,127 | $ 9,079 | $ - | $ - |
| 3j | Deutsche Bank - SLS (4.75% variable, amo 30 years, 30 year term) maturity date remains 5/1/2035; Escrow $353.62 | $ 185,802 | $ 23,487 | $ 162,315 | $ - | $ 1,200 | $ 6,002 | $ 14,404 | $ 14,404 | 14,404 |
| 3k | CCAP Auto Lease LTD | $ 1,920 | $ 1,920 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | **Total** | $ 1,151,677 | $ 264,538 | $ 898,082 | $ - | $ 6,912 | $ 34,559 | $ 70,348 | $ 49,502 | $ 49,502 |
| 4 | **Unsecured Creditors** | $ 43,109 | | $ 43,109 | $ 43,109 | $ - | | | | |
| 5 | **Equity** | | | | | | | | | |
| | **Amount for Real Estate Taxes (not escrowed)** | $ - | $ - | $ - | | $ 426 | $ 2,131.80 | $ - | $ - | $ - |
| | **Total Debt Payments** | | | | $ 73,165 | $ 8,175 | $ 124,556 | $ 70,348 | $ 49,502 | $ 49,502 |
| | Net Cash Flow For Period | | | | $ 30,284 | $ (1,977) | $ (93,566) | $ (11,332) | $ 9,514 | $ 814 |
| | Est. Sale Proceeds from Future Sale of Fond Du Lac Properties[2] and Arizona Property[3] | | | | | | $ 100,000 | $ 90,000 | | |
| | **Net Cummulative Cash Flow** | | | | $ 30,284 | | $ 36,718 | $ 115,386 | $ 124,900 | $ 125,715 |

Notes
(1)  Amount is per June, 2018 MOR plus sale proceeds from CO Property Sale; assumes cash flow breaks even through Effective Date.
(2) Proceeds from sale of Fond Du Lac Properties in 2018.
(3) Assumes sale of Goodyear Property in 2019.

James W. Ehlers
Case No. 16-29505-BEH

Addendum 2: Cash Flow Projections

| Monthly Operating Reports | 2017 | | | | | 2018 | | | | | | | MOR 7 Month Averages | Est. Effective | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug 15 to 31 | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | | Aug | Sep | Oct | Nov | Dec |
| **Revenue** | | | | | | | | | | | | | | | | | | |
| Health Care Income (Personal) | - | - | - | - | 6,479 | 1,179 | 2,413 | 4,408 | 1,765 | 4,776 | 2,154 | 5,011 | 3,101 | 3,101 | 3,101 | 3,101 | 3,101 | 3,101 |
| Health Temps, Inc. (S-Corp) | 3,185 | 9,986 | 15,459 | 3,056 | 15,675 | 6,774 | 8,437 | 11,330 | 9,055 | 5,951 | 10,937 | 11,138 | 9,089 | 9,089 | 9,089 | 9,089 | 9,089 | 9,089 |
| Interest | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Payroll Income - Corrected to Gross | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Totals** | **8,186** | **14,986** | **20,459** | **8,056** | **27,153** | **12,953** | **15,850** | **20,738** | **15,820** | **15,727** | **18,092** | **21,150** | **17,190** | **17,190** | **17,190** | **17,190** | **17,190** | **17,190** |
| **Personal & S-Corp Expenses** | | | | | | | | | | | | | | | | | | |
| Accounting Fees (Accrual Through 7/31/2018) | (60) | (328) | (1,656) | (1,264) | (791) | (640) | (600) | (864) | (752) | (624) | (1,408) | (856) | (821) | - | (2,032) | - | (5,056) | - |
| Legal Fees (Accrual Through 7/31/2018) | (3,033) | (2,124) | (2,902) | (2,979) | (3,245) | (6,126) | (622) | (1,139) | (2,914) | (5,505) | (6,812) | (4,554) | (3,953) | - | (21,341) | - | (25,000) | - |
| Miscellaneous Lumped Expenses | (4,489) | (5,499) | (5,218) | (4,377) | (5,049) | (5,638) | (4,534) | (11,197) | (6,306) | (5,321) | (5,018) | (5,953) | (5,544) | (5,544) | (5,544) | (5,544) | (5,544) | (5,544) |
| Payroll Expenses Correct to Net | (3,543) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) | (3,925) |
| Principal & Interest Expense Personal & Rental (Classes 3a - 3k) | (1,817) | (7,931) | (7,945) | (8,002) | (8,023) | (8,028) | (8,112) | (8,162) | (8,403) | (7,715) | (9,696) | (13,273) | (9,056) | (6,912) | (6,912) | (6,912) | (6,912) | (6,912) |
| Property Taxes - Mayville residence (included in P&I Expense per Plan Summary) | - | - | - | - | - | (1,747) | - | - | - | - | (1,879) | - | (518) | - | - | - | - | - |
| Trustee Fee (assumes administratively close case to reduce fees on or before 12/31/2018) | - | - | - | - | - | - | - | (975) | - | (1,625) | - | - | (371) | - | - | - | - | - |
| Medicare/FICA - Corrected to 15.3% | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) | (765) |
| Other Payroll Taxes | - | - | - | - | (42) | - | - | (42) | - | (17) | - | - | (8) | - | - | - | - | - |
| Priority/Secured Taxes (Classes 2a - 2f, assumes Fond Du Lac Properties Sold 2018) | - | - | - | - | - | - | - | - | - | - | - | - | - | (837) | (837) | (837) | (837) | (837) |
| Federal Tax Withholding Deposit | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) | (750) |
| Federal Tax Estimate per Tax Estimate | - | - | (15,412) | - | - | - | - | - | (26,076) | - | - | - | (3,725) | - | - | - | - | - |
| State Tax Withholding Deposit | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| State Tax Estimate per Tax Estimate | - | - | (6,792) | - | - | (3,900) | (325) | (325) | (5,938) | - | - | - | (1,498) | - | - | - | - | - |
| **Total Personal Expenses** | **(14,458)** | **(21,323)** | **(45,689)** | **(22,387)** | **(22,590)** | **(31,519)** | **(20,608)** | **(27,169)** | **(55,829)** | **(26,247)** | **(28,374)** | **(31,955)** | **(30,935)** | **(18,733)** | **(42,106)** | **(18,733)** | **(48,789)** | **(18,733)** |
| Net of Rental Income & Expense for Milwaukee, Fish Creek, Naples from MOR Except Principal & Interest Expenses | (60) | (4,162) | 642 | (558) | (3,747) | 4,024 | (5,469) | 2,395 | (3,854) | (1,267) | (2,277) | (8) | (922) | (8) | (8) | (8) | (8) | (8) |
| Net of Rental Income & Expense for Goodyear AZ Property from MOR Except Principal & Interest Expenses (sold in July 2019) | 673 | (860) | 2,146 | 708 | 1,168 | (249) | 1,279 | 1,301 | (1,149) | (204) | (1,017) | (1,322) | (194) | (194) | (194) | (194) | (194) | (194) |
| Net of Rental Income & Expense for Dumont CO Property from MOR Except Principal & Interest Expenses (sold in July 2019) | (609) | 366 | (737) | (1,476) | - | (58) | 2,074 | 1,764 | 4,191 | (919) | (1,018) | (3,253) | 397 | - | - | - | - | - |
| Net of Rental Income & Expense for 248 Fond du Lac Property from MOR Except Principal & Interest Expenses (sold in July 2019) | (1,343) | 549 | 886 | 1,090 | 1,300 | (2,323) | 854 | 497 | 1,088 | 1,300 | 731 | (309) | 262 | 262 | 262 | 262 | 262 | 262 |
| Net of Rental Income & Expense for 364 Fond du Lac Property from MOR Except Principal & Interest Expenses (sold in July 2019) | 500 | 1,250 | 799 | 1,080 | 891 | 356 | 449 | 1,105 | 1,019 | 1,250 | 586 | 1,135 | 843 | 843 | 843 | 843 | 843 | 843 |
| Total Net of Rental Income & Expense from MOR Except Principal & Interest Expenses | (839) | (2,856) | 3,736 | 844 | (388) | 1,751 | (814) | 7,062 | 1,295 | 159 | (2,994) | (3,757) | 386 | 903 | 903 | 903 | 903 | 903 |
| Amount for RE Taxes (not escrowed) - assumes Fond Du Lac Properties (sold in July 2019) | | | | | | | | | | | | | | (426) | (426) | (426) | (426) | (426) |
| **Projected Cash Flow** | **(7,110)** | **(9,193)** | **(21,495)** | **(13,488)** | **4,175** | **(16,815)** | **(5,572)** | **631** | **(38,714)** | **(10,361)** | **(13,277)** | **(14,562)** | **(13,359)** | **(1,134)** | **(24,507)** | **(1,134)** | **(31,190)** | **(1,134)** |

| | Plan Annualized | 2019 Calendar Year | 2020 Calendar Year | 2021 Calendar Year |
|---|---|---|---|---|
| $ | 37,210 | $ 37,210 | $ 37,210 | $ 37,210 |
| $ | 109,069 | $ 109,069 | $ 109,069 | $ 109,069 |
| $ | 1 | $ 1 | $ 1 | $ 1 |
| $ | 60,000 | $ 60,000 | $ 60,000 | $ 60,000 |
| $ | **206,281** | $ **206,281** | $ **206,281** | $ **206,281** |
| | | | | |
| $ | - | $ - | $ - | $ - |
| $ | - | $ - | $ - | $ - |
| $ | (66,529) | $ (66,529) | $ (66,529) | $ (66,529) |
| $ | (47,100) | $ (47,100) | $ (47,100) | $ (47,100) |
| | | | | |
| $ | (82,941) | $ (70,348) | $ (49,502) | $ (49,502) |
| | | | | |
| $ | - | $ - | $ - | $ - |
| | | | | |
| $ | - | $ - | $ - | $ - |
| $ | (9,180) | $ (9,180) | $ (9,180) | $ (9,180) |
| $ | (59) | $ (59) | $ (59) | $ (59) |
| | | | | |
| $ | (10,041.74) | $ - | $ - | $ - |
| $ | (9,000) | $ (9,000) | $ (9,000) | $ (9,000) |
| $ | - | $ (11,000) | $ (11,000) | $ (16,000) |
| $ | - | $ (3,900) | $ (3,900) | $ (3,900) |
| $ | - | $ (400) | $ (400) | $ (4,100) |
| $ | **(224,791)** | $ **(217,516)** | $ **(196,670)** | $ **(205,370)** |
| | | | | |
| | | | | |
| $ | (97) | $ (97) | $ (97) | $ (97) |
| | | | | |
| | | | | |
| $ | (2,334) | $ (1,167) | $ - | $ - |
| | | | | |
| | | | | |
| $ | - | $ - | $ - | $ - |
| | | | | |
| | | | | |
| $ | 3,150 | $ 1,575 | $ - | $ - |
| | | | | |
| | | | | |
| $ | 10,114 | $ 5,057 | $ - | $ - |
| | | | | |
| $ | 10,833 | $ 5,368 | $ (97) | $ (97) |
| | | | | |
| | | | | |
| $ | (5,116) | $ (2,558) | $ - | $ - |
| $ | **(13,610)** | $ **(8,833)** | $ **9,514** | $ **814** |

| Monthly Operating Reports | 2017 | | | | 2018 | | | | | | | | MOR 7 Month Averages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug 15 to 31 | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Averages |
| **Lump-Expenses** | | | | | | | | | | | | | |
| Automobile Expense | $ (425) | $ (35) | $ (149) | $ (23) | $ (43) | $ (98) | $ (29) | $ (103) | $ (35) | $ (28) | $ (225) | $ (29) | $ (78.09) |
| Contribution | $ (180) | $ (300) | $ (240) | $ (240) | $ (240) | $ (240) | $ (360) | $ (360) | $ (300) | $ (240) | $ (120) | $ - | $(231.43) |
| Dues and subscriptions | $ (45) | $ (99) | $ (102) | $ (100) | $ (103) | $ (90) | $ (105) | $ (284) | $ (186) | $ (66) | $ (91) | $ (146) | $ (138) |
| Gasoline | $ (301) | $ (624) | $ (783) | $ (721) | $ (699) | $ (606) | $ (588) | $ (571) | $ (577) | $ (532) | $ (766) | $ (767) | $ (630) |
| Gifts | $ - | $ - | $ - | $ - | $ (900) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Groceries | $ (54) | $ (58) | $ (99) | $ (126) | $ (69) | $ (90) | $ (59) | $ (55) | $ (69) | $ (290) | $ (125) | $ (95) | $ (112) |
| Haircut | $ - | $ - | $ (19) | $ (19) | $ (19) | $ - | $ - | $ (20) | $ (19) | $ - | $ (19) | $ (17) | $ (11) |
| Health Insurance | $ (871) | $ (871) | $ (871) | $ (871) | $ (1,121) | $ (1,161) | $ (1,161) | $ (1,161) | $ (1,161) | $ (40) | $ (1,161) | $ (2,282) | $ (1,161) |
| Insurance Expense | $ (182) | $ (861) | $ (621) | $ (225) | $ (553) | $ (185) | $ (185) | $ (897) | $ (826) | $ (186) | $ (871) | $ (126) | $ (468) |
| License & Fees | $ (10) | $ (26) | $ - | $ - | $ - | $ - | $ - | $ (203) | $ - | $ - | $ (90) | $ - | $ (42) |
| Meals & Entertainment | $ (449) | $ (708) | $ (725) | $ (622) | $ (494) | $ (1,007) | $ (612) | $ (544) | $ (634) | $ (1,562) | $ (438) | $ (292) | $ (727) |
| Medical Expense | $ (8) | $ (247) | $ (70) | $ (304) | $ (265) | $ (14) | $ (21) | $ (168) | $ (449) | $ (19) | $ (21) | $ (527) | $ (174) |
| Movies | $ - | $ (8) | $ (8) | $ (8) | $ (8) | $ (8) | $ (8) | $ (8) | $ - | $ (8) | $ (8) | $ (8) | $ (8) |
| Music | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (130) | $ - | $ - | $ - | $ (19) |
| New Furnace/Hot Water Heater | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (5,159) | $ - | $ - | $ - | $ - | $ - |
| Office Supplies | $ (78) | $ (74) | $ - | $ (8) | $ - | $ - | $ (21) | $ - | $ - | $ - | $ - | $ - | $ (3) |
| Parking & Tolls | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (122) | $ - | $ - | $ (17) |
| Political Contribution | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (50) | $ - | $ - | $ - | $ (7) |
| Postage | $ (93) | $ (97) | $ - | $ (63) | $ - | $ (50) | $ - | $ (43) | $ (52) | $ (3) | $ (50) | $ (50) | $ (35) |
| Repairs and Maintenance | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (120) | $ - | $ - | $ - | $ - | $ (17) |
| Retail | $ (592) | $ (977) | $ (244) | $ (537) | $ (72) | $ (1,118) | $ (604) | $ (790) | $ (356) | $ (1,068) | $ (415) | $ (795) | $ (735) |
| Software | $ (10) | $ - | $ (20) | $ - | $ (10) | $ (20) | $ - | $ (20) | $ (10) | $ (10) | $ (16) | $ (20) | $ (14) |
| Tax Preparation | $ (60) | $ - | $ (700) | $ - | $ - | $ (120) | $ - | $ (194) | $ (400) | $ (720) | $ (126) | $ (93) | $ (236) |
| Telephone Expense | $ (71) | $ (244) | $ (244) | $ (220) | $ (244) | $ (249) | $ (279) | $ (246) | $ (349) | $ (130) | $ (277) | $ (353) | $ (269) |
| Training | $ - | $ - | $ - | $ (49) | $ - | $ - | $ - | $ - | $ (46) | $ - | $ - | $ (70) | $ (17) |
| Travel Expense | $ (894) | $ - | $ - | $ - | $ (111) | $ (55) | $ (166) | $ (166) | $ (195) | $ (200) | $ - | $ - | $ (112) |
| Utilities | $ (166) | $ (270) | $ (324) | $ (240) | $ (98) | $ (525) | $ (336) | $ (288) | $ (254) | $ (97) | $ (199) | $ (281) | $ (283) |
| Total Miscellaneous Lumped Expense | $ (4,489) | $ (5,499) | $ (5,218) | $ (4,377) | $ (5,049) | $ (5,638) | $ (4,534) | $ (11,197) | $ (6,306) | $ (5,321) | $ (5,018) | $ (5,953) | $ (5,544) |

| Sale of Real Property & Fixtures | Liquidation Value | Est. Costs of Liquidation | Estimated Net Liquidation Value | Amt. to pay to Secured Debt | Claimed Exemption | Balance Available | Notes |
|---|---|---|---|---|---|---|---|
| 606 Wood Ct., Mayville, WI | $ 119,250 | $ 7,155 | $ 112,095 | $ 51,272 | $ 75,000 | $ - | Broker's fee of 6%. |
| 3736 S. North Haven Dr., Fish Creek, WI | $ 168,750 | $ 10,125 | $ 158,625 | $ 212,898 | $ - | $ - | Broker's fee of 6%; Results in incresae to unsecured claims of $54,273. |
| 364 4th St., Fond Du Lac, WI | $ 70,050 | $ 4,203 | $ 65,847 | $ 61,685 | $ - | $ 4,162 | Broker's fee of 6%. |
| 248 Elm St., Fond Du Lac, WI | $ 69,375 | $ 4,163 | $ 65,213 | $ 26,000 | $ - | $ 39,213 | Broker's fee of 6%. |
| 15695 W. Earl Dr., Goodyear, AZ | $ 231,000 | $ 13,860 | $ 217,140 | $ 195,683 | $ - | $ 21,457 | Broker's fee of 6%. |
| 486 Countryside Dr., Naples, FL | $ 229,500 | $ 13,770 | $ 215,730 | $ 226,469 | $ - | $ - | Broker's fee of 6%. Results in increase to unsecured claims of $10,739. |
| 22714 Hwy 6 #5945, Dillon, CO | $ 243,750 | $ 14,625 | $ 229,125 | $ 183,108 | $ - | $ 46,017 | Broker's fee of 6%. |
| 1550 N. Warren Ave., 110, Milwaukee, WI | $ 72,000 | $ 4,320 | $ 67,680 | $ 100,266 | $ - | $ - | Broker's fee fo 6%; Results in increase to unsecured claims $32,586. |
| Cash Accounts (as of filing) | $ 4,500 | | | | $ 4,500 | $ - | |
| Personal Property (less cash and automobiles) | $ 18,113 | $ 1,811 | $ 16,301 | $ - | $ 10,600 | $ 5,701 | 10% cost of sale |
| Automobiles | $ 17,649 | $ 1,765 | $ 15,884 | $ 11,642 | $ 4,000 | $ 242 | 10% cost of sale |
| Avoidable Transfers | $ - | | $ - | | | $ - | |
| Totals | | | | | | $ 116,792 | |

| | | |
|---|---|---|
| Chapter 7 Trustee Fees (§326(a)) | $ | 5,840 |
| Estimated Chapter 11 Administrative Expenses | $ | 25,000 |
| Estimated Priority Claims | $ | 190,790 |
| Amount remaining to pay unsecured creditors: | <span style="color:red">$ (104,837)</span> | |

Estimated Dividend to Unsecured Creditors Based Upon Unsecured Claims of $140,000.[3]          **0.00%**

Notes:

[1] This sheet is a liquidation analysis in the event this case were converted to a Chapter 7 as of the petition date.

The total amount owed to secured creditors is $1,046,000 not including secured tax claims.

The total amount of unsecured claims for this analysis is $140,000 based upon filed proof of claims and the deficiency portion of secured claims in a Chapter 7 liquidation.

[2] Real property value is valued based upon scheduled value less a 25% discount for liquidation.

[3] The Debtors' analysis shows Class 5 Unsecured Creditors receiving no distribution in a Chapter 7 liquidation.

**Addendum 5.0**
**Executory Contracts and Unexpired Leases**
**Pursuant to Article VI of the Plan**

| **Description of Executory Contract or Unexpired Lease** | **Arrearage** |
|---|---|
| There are none. | $0.00 |

**Addendum 6.0**

**Order Approving Loan Modification Agreement with JP Morgan Chase**

29

THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:



DATED: June 28, 2018

Beth E. Hanan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

---

IN RE                                           Chapter: 11
James W. Ehlers dba Health Temps, Inc.
                                                Case No. 16-29505-beh
    Debtor.

---

### ORDER GRANTING MOTION OF JPMORGAN CHASE BANK, N.A. TO VALIDATE LOAN MODIFICATION AGREEMENT

       Pursuant to the motion of JPMorgan Chase Bank, N.A. for the validation of a loan modification agreement between the parties with respect to the property located at 606 Wood Ct, Mayville, Wisconsin 53050, and there being no opposition to that motion,

IT IS HEREBY ORDERED as follows:

    1.  The stay of 11 U.S.C. § 362 is modified and annulled to the date the petition was filed so as to validate the loan modification agreement between the parties.

    2.  This order is effective upon its entry.

#####

**Addendum 7.0**

**Order Approving Stipulation with Toyota**

30

THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:



DATED: February 27, 2018

Beth E. Hanan
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| James W. Ehlers,<br>         Debtor. | Case No. 16-29505-BEH |

## ORDER APPROVING STIPULATION

The Court has reviewed the Stipulation filed January 22, 2018 between the Debtor and Toyota Motor Credit Corporation, its successors and/or assignees, resolving the motion for abandonment and relief from the automatic stay as to the Debtor's 2014 Toyota Camry, VIN: 4T4BF1FK7ER356078.

**IT IS THEREFORE ORDERED:** the stipulation, which is attached to this order, is approved, and the parties are authorized to act in accordance with its terms. The motion for abandonment and relief from the stay is deemed withdrawn as of the filing of the stipulation, subject to the conditions stated in the stipulation.

#####

In re:

                                                **Chapter 11**

    **James W. Ehlers**                                   **Case No. 16-29505-BEH**

                            **Debtor.**

## STIPULATION RESOLVING THE MOTION OF TOYOTA MOTOR CREDIT CORPORATION FOR ABANDONMENT AND RELIEF FROM THE AUTOMATIC STAY AND PROVIDING ADEQUATE PROTECTION

This matter came before the Court on the motion ("Motion") of Toyota Motor Credit Corporation ("Toyota") seeking an order for abandonment and relief from the automatic stay with respect to the Debtor's 2014 Toyota Camry, VIN:4T4BF1FK7ER356078 (the "Vehicle"). (*See* Docket No. 116.)

WHEREAS, the Debtor is a pharmacist and provides temporary services to pharmacies filling in for vacancies. The Debtor's job requires him to travel extensively. The Vehicle is necessary for his employment.

NOW, THEREFORE, to resolve the Motion, the parties hereby stipulate and agree to the following terms:

1.      Beginning on February 28, 2018, the Debtor shall pay a monthly adequate protection payment to Toyota in the amount of $141.98 ("Payment") with respect to the Vehicle. The Payment shall continue monthly, due to Toyota by the 28th day of each month and shall be drawn by check from the Debtor's accounts. The payment shall be made payable to Toyota Motor Credit Corporation, and the mailing address for payment is P.O. Box 9490, Cedar Rapids, IA 52409-9490.

Evan P. Schmit
Kerkman Wagner & Dunn
839 N. Jefferson St., Ste. 400
Milwaukee, WI 53202
Phone: 414.277.8200
Facsimile: 414.277.0100

Email:eschmit@kwdlaw.com

1

2.      The Payment shall constitute sufficient adequate protection under 11 U.S.C § 361 and shall satisfy any interest on Toyota's allowed secured claim under 11. U.S.C § 506(b).

3.      In addition to the Payment, the Debtor shall pay to Toyota a catch up payment of $6,260.45 for all past due post-petition amounts as described in the Motion (the "Catch-up Payment") by end of business, Tuesday, July 31, 2018.  The Catch-up Payment will be issued from the mileage account of Health Temps, Inc., the Debtor's business.  The mileage account is a separate account funded by the mileage cost Health Temps charges to its clients. The purpose of the mileage account is to pay for automotive expenses and repairs.

4.      In the event the Debtor fails to timely make either the Catch-up Payment or Payment, Toyota shall give notice to the Debtor and/or Debtor's Counsel of such failure, and the Debtor may cure such failure within 30 days of receiving notice.  If the Debtor fails to cure, Toyota may file an Affidavit of Default and proposed order for abandonment and relief from stay with respect to its collateral.

5.      This Stipulation shall control the rights of the parties until the end of the hearing which confirms the Debtor's plan of reorganization in this case.

6.      The Debtors shall prepare and file any appropriate motion with the Court to approve this Stipulation.

Dated: January 22, 2018

/s/ Michael Acevedo                           /s/ Evan P. Schmit
Michael Acevedo                               Evan P. Schmit
Cummisford, Acevedo & Associates, LLC         Kerkman Wagner & Dunn
Attorneys for Toyota                          Attorneys for the Debtor

P.O. Address:                                 P.O. Address:
7071 S 13th Street, Ste. 100                  839 North Jefferson, St. Ste. 400
Oak Creek, WI 53154                           Milwaukee, WI 53202-3744
Phone: 414.761.1700                           Phone: 414.277.8200
Facsimile: 414.255.3008                       Facsimile: 414.277.0100
Email: mike.acevedo@cummisford.com            Email: eschmit@kwdlaw.com

2